**Larry Gary COOPER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–90–01140–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

April 8, 1993.

Discretionary Review Refused June 16, 1993.

---

Lott J. Brooks, III, Houston, for appellant.

Ernest Davila, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

Appellant, Larry Gary Cooper, appeals his judgment of conviction for the offense of possession of a controlled substance, namely, cocaine, weighing less than 28 grams by aggregate weight including any adulterants and dilutants. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) and 481.115(a), (b) (Vernon 1992). Appellant waived his right to a jury trial. The Court rejected his not guilty plea and after finding the two enhancement paragraphs of the indictment to be true, assessed punishment at sixty-five (65) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

The relevant facts are as follows: On August 27, 1990, Houston Police Officer Charles Jefferson, while working undercover, was contacted by a confidential informant. The informant told Officer Jefferson that appellant had several pieces of cocaine inside a residence at 1103 Robin Street. The informant specified that cocaine was kept in the front bedroom. Jefferson deemed the informant trustworthy, and reliable based on previous contacts. On that date, at about 4 p.m. based on the informant's tip, the officer set up surveillance about a block away from 1103 Robin Street. The officer remained on surveillance for two to three hours. During that time, he saw appellant standing on the porch of the house and walk in and out of the house several times. He also saw about 15 other persons walk in and out of the house. Based on his experience as a narcotics officer, he suspected that the activity involved sale of illegal narcotics.

On August 28, 1990, Jefferson contacted the same informant. At about 4 p.m., the officer and the informant drove in an unmarked car to appellant's residence at 1103 Robin. The officer had previously searched the informant and found no contraband on him. The informant then walked up to the porch of the house and met with appellant. Appellant said "Yes, I have it" and the two walked inside the house. After a few minutes, the informant returned to the car and gave Jefferson some crack cocaine. As a result, the officer obtained a warrant to search the residence.

On August 29, 1990, at about the same time of day, Jefferson returned to the same area for further surveillance. The officer observed the same type of activity as the previous two days.

On August 30, 1990, Jefferson and a police raid team went to the area near appellant's house. Jefferson drove Officer Gary W. Doyle in front of appellant's house to show him where the raid team was to execute the search warrant. They saw appellant standing on the street and walk back into his house. Jefferson then drove Officer Doyle back to the raid team which was waiting in a van. About five minutes later, Officer Doyle drove the van to the front of appellant's house. The officers exited the van and entered the house to execute the search warrant; the house door was not locked.

Appellant was arrested by one of the officers. Officer Doyle then walked into the front bedroom and on a shelf, in plain view, found some crack cocaine wrapped in a paper towel. In addition, he found two envelopes which had appellant's name written on them; a photograph of appellant and a pistol. Another officer found a wallet in an adjacent bedroom. The wallet had the name "Cooper" stamped on it. The wallet contained appellant's Social Security card and his Texas Department of Corrections Identification card. The front bedroom closet contained men's clothes that appeared to fit appellant.

The cocaine that was seized was tested as 87.8 percent pure and weighed 12.8 grams. Officer Doyle estimated that that amount could yield 40 to 50 rocks of cocaine at a value of $450.

Appellant's wife, Jackie Cooper, testified for the defense. She claimed that appellant did not live at that house. She stated that during August 27 through 30, 1990, she was working from 3:30 to midnight.

She also stated that the door of the house at 1103 Robin was left unlocked while she was away. She admitted that appellant could have sold cocaine while she was at work. Appellant testified that he did not live at that house but was only visiting his children on the day that he was arrested. He claimed that Officers Jefferson and Doyle were liars.

In his sole point of error, appellant contends that the trial court should have granted his "motion to quash" because the State failed to establish affirmative links between him and the cocaine that was found at the house where he was arrested. Appellant's point of error does *not* allege that there was insufficient evidence to support the court's verdict of guilty. In *State v. Jimenez*, 763 S.W.2d 436, 437 (Tex.App.—El Paso 1988, pet. ref'd), the court held that "there is no pretrial procedure to test the sufficiency of evidence in a criminal case." For that reason alone, appellant's point of error should be overruled. The insufficiency of the evidence to support the offense alleged will not alone invalidate an indictment and call for its dismissal. *Givens v. State*, 438 S.W.2d 810 (Tex.Crim.App.1969).

The point of error as presented will be treated as challenging the sufficiency of the evidence to support the conviction. When reviewing a sufficiency of the evidence claim, the appellate court should view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the appellant guilty of all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard applies to both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). The trial judge, when sitting as the trier of fact, is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Mattias v. State*, 731 S.W.2d 936, 940 (Tex.Crim.App.1987). The trial judge is entitled to accept or reject any or all of a witness's testimony. *Id.* at 940.

To establish unlawful possession of a controlled substance, the State must prove that the accused exercised care, custody, control and management over the contraband. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986). The control over the controlled substance need not be exclusive, but can be jointly exercised by more than one person. *Id.* at 47. When the accused is not in exclusive control of the place where the contraband is found, the State must show additional affirmative links between the accused and the contraband. *Id.* The affirmative links can be established by showing additional facts and circumstances which raise a reasonable inference of the accused's knowledge and control of the contraband. *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Crim.App.1981). *See Brown v. State*, 807 S.W.2d 615 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *Brazier v. State*, 748 S.W.2d 505, 508 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

In the instant case, various facts were shown to affirmatively link appellant to the crack cocaine found at 1103 Robin. There were several factors that showed that appellant lived in that residence. He was at the house for *at least* four consecutive days, i.e., he was there every time Officer Jefferson conducted surveillance at that location. During that period, appellant went in and out of the house without knocking. *See Edwards v. State*, 813 S.W.2d 572 (Tex.App.—Dallas 1991, no pet.) (circumstances indicated that the accuse lived in apartment where drugs were found even though no documents, personal effects or keys were found). The clothes in the closet of the bedroom where the cocaine was found appeared to fit appellant. *Pigg v. State*, 760 S.W.2d 330 (Tex.App.— Beaumont 1988, no pet.) (clothes that fit the defendant were found in the closet where drugs were seized). Two envelopes found in that bedroom were addressed to him. *Herrera v. State*, 561 S.W.2d 175 (Tex.Crim.App.1978) (letters addressed to the defendant were in the apartment where marijuana was found). *See also Brown*, 807 S.W.2d at 617. Appellant's picture was found in that bedroom. *Id.* (photographs of the accused seized during the search).

Appellant's wallet was found in an adjacent bedroom. The wallet contained his Social Security card and his Prison Inmate card. Soon after appellant's wife found out that appellant was paroled, she moved to that residence and had electricity service supplied to the house. Appellant listed his wife's address as the place to be paroled out to. When appellant was arrested and was being taken away, his children pleaded that their father not be taken from home.

Appellant's activity during Officer Jefferson's surveillance (going in and out of the house with various other persons), indicated that he was involved in the illegal sale of narcotics. Appellant's wife, who worked from 3:30 to midnight—during the period of surveillance, testified that appellant could have sold cocaine while she was away. She indicated that she left the door to the house open so that appellant would not need a key. Therefore, he was able to sell the drugs form that house even if he did not live there.

The confidential informant, who was known to be trustworthy and reliable, told Officer Jefferson that appellant had drugs in the front bedroom of the house. The informant's tip was corroborated when Officer Doyle found the cocaine in the front bedroom. The most telling evidence was the actual purchase of cocaine from appellant, at 1103 Robin, by the confidential informant on August 28, 1990, two days before his arrest. *Price v. State,* 756 S.W.2d 777, 779–81 (Tex.App.—1988, no pet.) (informant's tip corroborated by discovery of contraband).

We find that the State provided the Court with sufficient facts and circumstances which affirmatively linked appellant to the crack cocaine and thus created a reasonable inference that the accused knew of the contraband's existence and that he exercised control over it. *See Dickey v. State,* 693 S.W.2d 386, 389 (Tex.Crim.App. 1984).

■ Further, we have reviewed the evidence using the reasonable hypothesis test. The test states that a conviction on circumstantial evidence cannot be sustained if the circumstances proved do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. *Freeman v. State,* 654 S.W.2d 450, 454 (Tex.Crim.App. 1983). We find after reviewing the evidence that, as fact-finder, the trial court was entitled to believe or disbelieve the witnesses that testified. We therefore come to the conclusion that under the evidence presented, there was proof of appellant's guilt excluding all other reasonable hypothesis. Appellant's sole point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

J. CURTISS BROWN, C.J., concurs in the result only.